UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| BARBARA ELLEN DIAZ GUZMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 21-177-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KILOLO KIJAKAZI, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Barbara Ellen Diaz Guzman appeals the Acting Commissioner of Social Security's denial of her claim for disability insurance benefits. Specifically, Guzman contends that the Administrative Law Judge's ("ALJ") decision is in error because "it relie[d] on an improper evaluation of the medical opinions of record." [Record No. 19, p. 1] She also contends that the ALJ assigned to her case erred in failing to include certain limitations in her residual functional capacity ("RFC"). [*Id.*] However, upon review of the record and the parties' arguments, the Court finds that the ALJ's decision is based upon substantial evidence and correctly applies applicable rules of law. Accordingly, the Acting Commissioner's decision will be affirmed and the relief sought by Guzman will be denied.

I.

Guzman filed the instant application for disability insurance benefits ("DIB") on October 15, 2018. She alleges that her disability began on August 31, 2018. [Tr. 243] The claim was denied initially (January 16, 2019) and upon reconsideration (May 20, 2019). [Tr. 173, 180] ALJ Jerry Lovitt held an administrative hearing on March 10, 2020. [Tr. 39] On

April 27, 2020, he issued a written opinion denying benefits. [Tr. 15–33] The Appeals Council rejected Guzman's request for review on April 20, 2021. [Tr. 1] Accordingly, this matter is ripe for judicial review. *See* 42 U.S.C. § 405(g).

## II.

Plaintiff was 53 years old at the time of the ALJ's decision. She was married and lived with her husband, four dogs, and one cat. Guzman previously worked on an assembly line and as a machinist, although she has not been gainfully employed since August 2018. [Tr. 276–77] She contends that she became unable to work at that time due to her "mental state," including struggles with anxiety and depression.[1] [Tr. 63] Despite these allegedly debilitating symptoms, Guzman's daily activities during the relevant period included caring for multiple pets, driving, shopping, paying bills, using a checkbook, maintaining a day planner, washing dishes, laundering clothes, preparing meals, attending to her own personal care, vacuuming, and mopping. [Tr. 297–300, 308, 327, 330–34, 454]

Guzman testified that she ceased working due to uncontrollable nervousness and crying spells. [Tr. 63–67] She has a longstanding history of anxiety dating back to childhood and has received treatment for psychiatric symptoms since the 1990s. [Tr. 453–54] Guzman was treated by Melissa Barnett, APRN, at the White House Clinic for several years after she began complaining of reoccurring mood swings and difficulty adjusting at work. [Tr. 538] Barnett's treatment notes from June 13, 2018, indicate that Guzman presented with fatigue, anxious and racing thoughts, restlessness, and irritability. [Tr. 527] Over the next few months, Barnett

---

[1] Although Guzman has a variety of health issues, the arguments in both parties' briefs focus exclusively on her mental functioning. [*See generally* Record Nos. 19-1, 20.]

diagnosed Guzman with depression and anxiety, and eventually referred her to psychiatry. [Tr. 468]

Guzman presented for an initial appointment with Joseph Armstrong, LPCC, of Kentucky Counseling Center, on December 31, 2018. [Tr. 722–23] Armstrong found that Guzman had a constricted affect, depressed mood and distracted attention but appropriate general appearance and behavior; unremarkable perception and flow of thought; good insight and judgment; and she was oriented to person, place, and time. [Tr. 722] Armstrong's listed diagnoses included depressive disorder due to another medical condition, anxiety disorder due to another medical condition and social anxiety disorder. [Tr. 723] He eventually issued a treating source statement, concluding that Guzman was moderately to extremely limited in almost all categories, including her ability to understand and apply information, to interact with others, and to concentrate and maintain pace. [Tr. 636–37] He also concluded that, among other limitations, the claimant would be off task 25 percent of the workday, and that she would miss more than four days of work per month. [Tr. 633–38]

On January 2, 2019, Guzman reported to Dr. Maude O'Neill for a consultative psychological evaluation at the request of the Social Security Administration. [Tr. 451] Dr. O'Neill noted that Guzman's affect was tense and that she tended to deflect or look to her husband when responding to questions. [*Id.*] Dr. O'Neill diagnosed borderline personality disorder and or/bipolar II disorder, as well as an unspecified anxiety disorder and severe major depressive disorder. [Tr. 455] Her medical source statement concluded that, while Guzman's ability to understand and remember simple instructions remained unimpaired, her abilities to sustain attention, to respond appropriately to others, and to adapt to day-to-day work pressures were all moderately to markedly impaired. [*Id.*]

On January 9, 2019, state agency medical consultant Tonya Gonzalez, Psy.D., reviewed Guzman's treatment records and concluded that Guzman had no more than moderate mental limitations. [Tr. 101] These same findings were adopted on May 16, 2019, by another state agency consultant, Ilza Sillers, Ph.D. [Tr. 138–39] Despite these moderate limitations, both consultants determined that Guzman could still understand and remember simple instructions; sustain attention for simple tasks; tolerate occasional contact with coworkers and supervisors; and adapt to gradual, infrequent changes. [Tr. 105, 139]

Guzman's treatment records from throughout 2019 indicate a mixture of normal and abnormal mental status findings. In February of that year, Rhonda Blevins, Guzman's advanced practice psychiatric nurse, found that Plaintiff's mental status was normal or appropriate across the board. [Tr. 901] Blevins instructed Guzman to continue medications and therapy and follow up in the next few months. [Tr. 904] In exams spanning from January to October of 2019, LPCC Armstrong noted that Plaintiff reported anxiety in public, experienced trouble with social situations at work, mood swings, and depression accompanied by menopause, hypothyroidism, and Hashimoto disease. [Tr. 734, 738, 752, 754, 784, 805, 821, 835, 855, 862] However, Blevins' mental status exam findings from that same period are largely normal, reflecting Guzman's depressed or anxious mood but otherwise appropriate or unremarkable dispositions. [Tr. 728, 744, 758, 778, 799, 815, 846, 868] On July 21, 2019, Blevins issued a treating source statement, concluding that Guzman was moderately limited in all the listed areas, would likely be off task 25 percent of the workday, and would miss more than four workdays per month. [Tr. 629–32]

During this span, both providers instructed Guzman to continue all medications and therapy, exercise, and utilize anxiety management techniques like deep breathing. [Tr. 733–

- 4 -

35, 739, 748, 751–53, 756, 759, 776, 779, 806, 818, 827, 837, 849, 856, 871] These recommendations are consistent with the overall conservative nature of Guzman's treatment. Her treatment files since the onset date of her alleged disability demonstrate a lack of aggressive interventions such as inpatient hospitalizations, crisis stabilizations, or psychiatric commitments. [*See, e.g.*, Tr. 457–628, 722–908.] Instead, Guzman's condition was managed through routine therapy and medication—which appeared to be working. [*See* Tr. 868 (Guzman reports in October 2019 that she is "doing ok, doing therapy, [which is] helping as much as it can.").]

Following the administrative hearing, ALJ Lovitt determined that Guzman had the following severe impairments: obesity; degenerative disc disease; degenerative joint disease (left knee); anxiety; and depression. [Tr. 19] After considering the entire record, he determined that Guzman had the functional residual capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) with the following modifications:

> Occasional climbing of ramps/stairs, frequent balancing, stooping, kneeling and crouching. Occasional push of foot controls with the left lower extremity. No crawling, no climbing of ladders, ropes and scaffolds, no unprotected heights, and with no more than frequent exposure to temperature extremes and vibrations, and would require an occupation with an established routine and set procedures in place, and with few changes occurring during the workday, and with no fast-paced production line, assembly line, or quota driven work, and with frequent contact with supervisors, and occasional contract with co-workers and with the general public.

[Tr. 22] Based on the foregoing findings, the ALJ concluded that Guzman was not capable of performing her past relevant work as an inspector/packager, production assembler, sales attendant, assembler of motor vehicles and materials handler. [Tr. 30] However, relying on the vocational expert's testimony, ALJ Lovitt concluded that there were other jobs existing in

significant numbers in the national economy that she could perform, including Linen Room Attendant, Hospital Cleaner, and Hand Packager. [Tr. 31] Accordingly, the ALJ found that Guzman was not disabled under the Social Security Act (the "Act").

### III.

A "disability" under the Act is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that she suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination regarding disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether she can perform

her past work. 20 C.F.R. § 404.1520(e). If she can, she is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching his decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## IV.

Guzman contends that the ALJ erred in his evaluation of certain medical opinions. [Record No. 19-1, p. 9] Specifically, she argues that ALJ Lovitt failed to comply with agency rules requiring him to articulate how he considered these medical opinions, how persuasive he found them, and the supportability and consistency of each opinion. [*Id.*, p. 10] But these

arguments are without merit. Rather, the ALJ's decision is supported by substantial evidence and will be affirmed.

Guzman challenges the evaluation of three different medical source opinions regarding her mental capacity. The first opinion is that of Maude O'Neill, Ph.D., which the ALJ found "unpersuasive." [Tr. 28] He noted that a substantial portion of Dr. O'Neill's statements were based on Guzman's self-reported symptoms and thus lacked supportability.[2] [*Id.*]; *see* 20 C.F.R. § 404.1520c(c)(1) (explaining that supportability looks to the objective medical evidence and supporting explanations presented by a source). Further, the ALJ found that Dr. O'Neill's conclusions were inconsistent with Guzman's overall treatment records, which reflect mostly normal findings across multiple examinations. [*Id.*]

The second opinion is that of Joseph Armstrong, LPCC. ALJ Lovitt found this opinion unpersuasive as well. [Tr. 28] He explained that Armstrong's opinion that Guzman required extreme limitations was not supported by his own treatment records, which showed mostly mild to normal mental status exam findings. [Tr. 28 (citing Tr. 722–904).] Regarding consistency, the ALJ found the opinion inconsistent both with Plaintiff's conservative treatment and her ability to perform activities of daily living.[3] [*Id.* (citing Tr. 296–313).]

---

[2]  Guzman argues that this is "speculation as to the basis of the doctor's opinion" and does not support a finding that the opinion is unpersuasive. [Record No. 19-1, p. 11] She is incorrect, however. Dr. O'Neill specifically states that the limitations in responding to supervision, coworkers, and the public were "based on [Guzman's] report of her work and social histories." [Tr. 455] This, combined with the inconsistency discussed above, constitutes substantial evidence supporting the ALJ's decision.

[3]  Guzman contends that the ALJ mischaracterized her daily activities, citing her own testimony about greater limitations. [Record No. 19-1, pp. 12–13] That testimony, however, conflicts with statements elsewhere in the record describing a broader range of activities. [*Compare* Tr. 68–70 (hearing testimony), *with* Tr. 298–300, 327, 330–34, 454 (statements from various reports indicating greater daily activities).] It is for the ALJ, not this Court sitting

Either of these inconsistencies is sufficient reason to disregard the opinion. *See Mueller v. Comm'r of Soc. Sec.*, 683 F. App'x 365, 366 (6th Cir. 2017) (unpublished) (finding inconsistency between physician's opinion and claimant's treatment and/or daily activities sufficient reason to discount the opinion).

The final opinion at issue is that of Rhonda Blevins, APRN. Unlike the other opinions, the ALJ found Blevins' to be at least partially persuasive. [Tr. 28] He accepted Blevins' assessment that Guzman's mental limitations were moderate, finding this to be consistent with and supported by Blevins' own treatment notes. [*Id.*] However, ALJ Lovitt found unpersuasive the opinion that Plaintiff would be off task more than 25 percent of the workday and that she would miss more than four workdays per month. [*Id.*] Guzman argues that the ALJ failed to point to any evidence in support of this conclusion. [Record No. 19-1, p. 12] But this argument is contradicted by the ALJ's opinion. [*See* Tr. 15–33.]

The ALJ expressly states that that portion of Blevins' opinion is "not supported at all by the overall objective evidence and [is] inconsistent with it." [Tr. 28] He discussed that objective evidence at length throughout his opinion, including Guzman's symptoms, daily activities, work history, treatment plans, statements to providers, and more. [Tr. 17–30] Guzman's argument boils down to a complaint that the ALJ did not reproduce this information in one specific section. But he is not required to do so. *See Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (unpublished) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why [the medical opinion]

---

in review, to resolve these evidentiary conflicts. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) ("[C]redibility determinations are typically the province of the ALJ, not reviewing courts."). ALJ Lovitt has done so, and his decision is supported by substantial evidence.

was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion."); *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (unpublished) ("[T]he ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three.").

Under agency rules for considering opinion evidence, an ALJ must assess the persuasiveness of medical opinions using the following factors: 1) supportability; 2) consistency; 3) relationship with the claimant; 4) specialization; and 5) other factors. 20 C.F.R. § 404.1520c(a)(c). Supportability and consistency are the two most important factors, and the only ones that the ALJ *must* address in his decision. 20 C.F.R. § 404.1520c(b)(2). Here, the ALJ has done so regarding each of the opinions at issue. [Tr. 28–29] And while Plaintiff couches her argument in terms of procedure, it seems her true quarrel is with the substance of the ALJ's decision. However, because the ALJ has applied the correct legal standard and his findings are supported by substantial evidence, those finding are conclusive and Plaintiff's argument fails. 42 U.S.C. § 405(g); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding *even if there is substantial evidence that would have supported the opposite conclusion*.") (emphasis added).

Guzman next argues that the ALJ committed reversible error by failing to include in her RFC certain limitations contained in the medical opinions that he found persuasive.[4]

---

[4] Although Guzman initially claims the issue is that the ALJ "failed to *explain* why his RFC does not include limitations contained in the medical opinions he found persuasive," the true thrust of her complaint is that the ALJ failed to include them at all. [*See* Record No. 19-1, p. 15 ("The ALJ's *selection* of only those limitations which did not render Plaintiff disabled is legal error.") (emphasis added).] She does not direct any argument towards the alleged

[Record No. 19-1, p. 14–15] She claims that the ALJ's decision must be vacated because it is "supported only by his improper picking and choosing from the medical opinions." [*Id.*, p. 15] While Plaintiff is correct that the ALJ did not include the specific limitations at issue, her argument for vacatur remains unavailing.

ALJ Lovitt found the opinions of state agency consultants Tonya Gonzalez, Psy.D., and Ilze Sillers, Ph.D., highly persuasive. [Tr. 29] In relevant part, Dr. Gonzales limited Plaintiff to the following: occasional contact with supervisors, no contact with the public, and simple instructions/duties. [Tr. 101, 103–05] Dr. Sillers later adopted these limitations in her own opinion. [Tr. 134, 137–39] Despite this, the ALJ's RFC finding permitted Guzman frequent contact with supervisors, occasional contact with the public, and contained no express limit on the level of instructions and/or duties. [Tr. 22]

Even assuming that these changes are legal error, however, such error is ultimately harmless. *See Berryhill v. Shalala*, No. 92-5876, 1993 WL 361792, at *7 (6th Cir. 1993) (unpublished table decision). There is no conflict between the omitted limitations and the demands of the jobs the ALJ found Plaintiff able to perform at step five of his analysis. Regarding the limitations on interactions with supervisors and the public, the Dictionary of Occupational Titles ("DOT") job descriptions makes clear that none of the jobs cited by the ALJ require significant interpersonal interaction. *See* DOT Job Nos. 222.387-030 (linen room attendant), 323.687-010 (hospital cleaner), and 920.587-018 (hand packager). Moreover, each job's *highest* appropriate function in relation to other people is limited to "[t]aking [i]nstructions." *See id.*; DOT App'x B.

---

failure to explain, instead taking issue with the ALJ's omission itself. [*See id.*, p. 14–15] Accordingly, that is the argument that the undersigned will address.

Regarding the limit to simple duties, each of the cited jobs have a specific vocational preparation ("SVP") level of 2, which corresponds to unskilled work. *See* SSR 00-4p, 2000 WL 1898704 at *3 ([U]nskilled work corresponds to an SVP of 1-2."). And by definition, unskilled work requires only simple duties. 20 C.F.R. § 404.1568(a) ("Unskilled work is work which needs little or no judgment to do *simple duties*.") (emphasis added).

And regarding the limit to simple instructions, the cited jobs have general educational development ("GED") reasoning levels of 2, which requires handling "detailed *but uninvolved*" instructions. *See* DOT App'x C III (emphasis added). Plaintiff argues that the assessed limitation to "simple" instructions is *only* consistent with jobs requiring a GED reasoning level of 1, reflecting the capacity for "simple *one- or two-step*" instructions. [Record No. 19-1, p. 14–15]; DOT App'x C III (emphasis added). Her position is incorrect.

While a GED reasoning level of 2 is inconsistent with a limitation to 1-2 step tasks, neither Dr. Gonzalez nor Dr. Sillers included that limitation. [*See* Tr. 103–05, 137–39.] Absent such a categorical restriction, the broader limitation to "simple" instructions is generally consistent with jobs requiring GED reasoning levels of 1 *or* 2—like those cited by the ALJ. Because the omitted limitations do not conflict with the ALJ's finding at step five or his overall determination of non-disability, any error is harmless. *See Berryhill*, 1993 WL 361792, at *7 (quoting *Kurzon v. United States Postal Serv.*, 539 F.2d 788, 796 (1st Cir. 1976)) ("[T]he court will remand the case to the agency for further consideration only if 'the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the [error] removed from the picture.'").

## V.

Because ALJ Lovitt had the "task of making sense of the record, reconciling conflicting medical opinions and evidence, and weighing the credibility of [Guzman's] subjective complaints," this Court's review is limited to whether he relied on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). At each stage of the analysis, ALJ Lovitt explained which evidence compelled his conclusion, and why he considered other evidence less persuasive. He considered the combined effects of Guzman's impairments and assigned an RFC that addressed those impairments. At the final step of the analysis, the ALJ relied on the testimony of a vocational expert to conclude that significant jobs exist in the national economy that Guzman may perform. His decision is supported by substantial evidence.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. Plaintiff Guzman's motion for judgment on the pleadings [Record No. 19] is **DENIED**.

2. Defendant Acting Commissioner Kilolo Kijakazi's motion for summary judgment [Record No. 20] is **GRANTED**.

3. The Acting Commissioner's decision denying benefits will be **AFFIRMED** by a separate judgment to be entered this date.

Dated: February 2, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky